I hope I didn't scare everyone if you were in here when I said that we were recessing until after lunch. I said that a few minutes ago, but we're back for our last case this morning. This is People v. Meinders. Did I pronounce that correctly? I'm going to tell the attorneys here that Justice Harris had to attend a funeral, and the court decided that rather than continue this case, we would allow you to proceed this morning. However, as you know, everything is taped, and Justice Harris will listen to arguments today through the audio, and then we will be meeting with him as a panel to discuss what we want to do with this matter. So he will listen to the audio, and you may proceed at this point. May it please the Court, and Mr. McNeil, good morning, Your Honors. Lawrence Fasch, representing Kenneth Meinders. My argument today is that Mr. Meinders was not allowed an opportunity at trial to present a full defense. Specifically, there were actually two theories of defense that are evident if you look at the evidence that was attempted to be presented, as well as counsel's argument and the instructions that he requested. First theory was that Mr. Meinders was justified in his actions in that the police were using excessive force. And the second theory was that at least some of his actions were involuntary, either the result of simply being awoken abruptly by police or by the effects of the tasers that were used on him during the altercation. The two things that happened that prevented trial counsel from completely presenting this defense was, one, the trial court limited the testimony of defense expert Charles Drago, and two, the jury was not completely and properly instructed. As to Mr. Drago's testimony, it's clear from the record that there was evidence that entitled Mr. Meinders to argue that he was justified in resisting because police were using excessive force. The trial court agreed with that, at least in part. He partially instructed the jury that you cannot resist an unlawful arrest unless, and then that rule does not apply when the officers are using excessive force. By instructing the jury in that way, the trial court was acknowledging that this was a question for the jury. Where the trial court made a mistake, though, was he limited Mr. Drago's testimony. He did not allow Mr. Drago to testify that, in his opinion, the police were acting wrongly. The trial court said that any opinion that the police were doing something wrong doesn't constitute a defense. Well, that's inconsistent with giving the instruction that tells them that you can resist an excessive force. Was that the judge's mistake? Yes, Your Honor. Giving the instruction in the first place? No, Your Honor. That was not a mistake. Well, that would explain the inconsistency, though, wouldn't it? Except that he did agree to give that instruction. Well, if he was wrong in doing that, then your client got a good deal, even though he didn't get the rest of the instruction. With all respect, he wasn't wrong in giving that instruction based on the evidence that was presented at trial. What was the evidence that justified giving the instruction? The fact that the police literally beat this person, applied the taser 24 times, put him in a coma for three weeks. There were two witnesses that testified for the defense that said that when they entered the house, they saw police kicking and punching the defendant while he was on his stomach on the floor. All this evidence is evidence that the jury could have believed. We're not arguing that the evidence was insufficient to convict him beyond a reasonable doubt. We're arguing that there was evidence that justified the instructions in this case. Isn't the rule that a police officer dealing with a claim of excessive force by a police officer, that it's limited to a situation in which the officer uses excessive force prior to the defendant's use of force to resist? Well, initially I would argue that if... Is that a yes? There is case law that says that if the police... Is that a yes? Counsel, I try to ask my questions clearly and explicitly. I'd prefer to get the response first, and then if there's some clarification afterwards, you can provide it. Then I would answer yes. Okay. Now what is the clarification you want to add? It's our position that what happened in this case went beyond that point. After the defendant, in this case, resisted, the police went too far. We don't believe that the law says that simply because you resist, you cannot then resist excessive force, respond to the excessive force. The other reason why we believe that Charles Drago's opinions were relevant is because the prosecutor opened the door to some of those opinions  Once he did that, he placed into evidence or into a question for the jury whether they were properly trained, whether they properly responded in this particular situation. And in that respect, the testimony of Charles Drago should have been allowed to refute these suggestions that the police were properly trained in this case. The third thing that Charles Drago would have testified to were the effects of tasers. As I indicated, one of the defense theories was that some of Mr. Minder's actions were involuntary. It could have been because he had just been woke up from a sleep or from the effects of tasers. This is what Mr. Drago would have testified to. The only reason why the trial court gave for not allowing this testimony was that it was a medical opinion. And we know that's not the test in Illinois. The test is whether or not Mr. Drago had specialized knowledge, not commonly known, to laypersons that would have aided the jury in determining whether or not the actions of the defendant were involuntary. The second area where we believe that the defense was limited was the fact that the jury was not properly instructed in several respects. Initially, only slight evidence of a defense theory is necessary to require an instruction. And even if the evidence is inconsistent or of doubtful credibility, the jury still should be instructed if it's one of the defense theories. Trial counsel offered an instruction on voluntary acts. As we know, a voluntary act is required, and involuntary acts are not criminally liable. He offered this instruction, and the trial court refused to instruct the jury. We have evidence that the defendant was awoken by police in perhaps a rough manner, and it's possible that his actions were still while he was sleeping. We have evidence that he was tasered 24 times. It's possible that his actions were involuntary due to the electrical current that was being passed through his body. For these reasons, he should have received an instruction on involuntary actions, that his actions were not liable because they were involuntary. What's the evidence that they were not voluntary? Well, initially there was evidence that he was asleep. We know from case law that someone who's asleep, actions that are done while you're asleep are not voluntary. In addition, the electrical current passing through his body... when he kicked and struggled, that he was still sleeping? There was evidence that he was sleeping, and the police woke him up. Now, the police, of course, testified, and their testimony was that he was awake. But it's not necessary that the jury believe that testimony. That's all the testimony there was. Well, but the police in this case, that is all the testimony there was on what happened in there. But the jury could have determined that these police officers had a motive to minimize their liability in this case. It's clear that these police officers could have been civilly liable or subject to discharge if what they did was excessive, if they did not follow proper police procedures. So the jury could have taken that into account. That's certainly a motive that they could have taken into account in determining whether to believe the police officers. It's possible the defendant, being still asleep, kicked the officer. The defendant should have gotten an instruction on that. It's possible that because he was being tasered, his actions were involuntary, whether in striking the officer or in placing his hand on the officer's guns for the charge of disarming a police officer. This is evidence that the jury could have believed and found that his actions were not liable. That's why we believe that he should have gotten an instruction on this. Well, what you're calling evidence opposing counsel might argue is pure speculation. Well, I'm arguing inferences just like they are, Your Honor. It's an inference from the evidence. It's whether there only has to be slight evidence to justify an instruction. The defendant was asleep and they shook him awake and pulled him off the couch. The jury could have determined that he was still asleep when he kicked the officer, similar with the use of the tape recorder. How does that work? You're asleep and you kick the officer? It's common. I don't think common sense has to be left at the door. When you're asleep, your actions are involuntary. If he was asleep when he kicked the officer, it was an involuntary act. According to the evidence, at what point did he kick the officer? Well, the evidence, as the police testified to, was that he was shook awake. One officer testified that he opened his eyes and then kicked the officer. Was he standing up? Where was he at the time? He was laying on the couch, Your Honor. The jury did not have to believe all of that testimony. That's our position. That's why we believe that an instruction was warranted in this case. In addition, trial counsel offered two instructions on the justified use of force. Only one of those was given. The one that was not given by the trial court was the one that actually told the jury that a person is justified in the use of force if he believes that a police officer is using excessive force. The fact that part of the instruction was given, or instruction number two, was kind of an overview of this principle, that was insufficient. And our position is that he should have fully instructed the jury when he decided, after first refusing both instructions, to give only one instruction, that that was incorrect. That he should have given both instructions at that point. The last instructional issue involves the charge of disarming a police officer. And as we know, in this case, it was an attempt at disarming a police officer. But that offense is separately defined in the disarming a police officer statute. Trial counsel objected to the instruction that the prosecutor offered, because it did not include the requirement that a substantial step be taken toward the act of disarming a police officer. Given that that was not part of the instructions, the jury was then incorrectly instructed that they could find the defendant guilty if he just simply touched the weapon. They did not know that a substantial step was required. Based on... You mean the instruction said if he just touched the weapon, he's guilty? The instruction did not say that if he just touched the weapon, but absent a specific instruction that a substantial step was required, they could have found that simply touching the weapon was sufficient. What did the instruction say? The instruction paralleled the language in the statute without the language of substantial step, which is not in the disarming a police officer, a peace officer statute. What did the language in the instruction give and say? On top of my head, I can't give you the exact language. Did it use the word attempted to disarm the officer? The prosecutor did modify the instruction to indicate that an attempt, it was an attempt to disarm. And the jury could have thought that meant touching it? Without the instruction, the full instruction, that a substantial step was required, it's our position that they could have made that finding. Unless the court has any further questions. Thank you. Go ahead, Rebel. Mr. McNeil. Good morning, police and court, counsel. The record here is undisputed. The only accounts of the incident were the four police officers. Testified consistently that they found defendant laying on the couch, told him to wake up. Defendant verbally responds the first time, mumbling or saying something like, I'm trying to sleep, leave me alone. Police tell him to get up again. They shake his shoulder, which is a common way to wake someone up. I don't know where defendant, where in the evidence that it says that they shook his shoulder in a rough manner or anything like that. They testified that they shook his shoulder and identified themselves as police. As soon as they identified themselves as police, defendant looks at Officer Regone, rears back, and kicks him in the leg. Continues punching and kicking until it takes four officers to finally cuff him on the ground. During the struggle, defendant also attempted to take Officer Regone and Smith's guns out of their holsters. Both of those people testified to that fact, and both the other officers testified corroborating those observations. Officers reasonably feared for their lives here when defendant was attempting to disarm two officers, and the officers admitted to tasing defendant multiple times. The logs at least say that the tasers went off 24 times. The record's unclear on whether all of those were applied to defendant or not, but the logs at least say that the tasers amounted to 24 times. Of course, these are all in response to defendant's violent resistance throughout the whole encounter, as well as defendant basically saying that the tasers had no effect on him, taunting the officers saying, do it again, things like that after the tasers. Then comes this expert, Drago. He reviews materials that amount to the officers' accounts. Again, defendant testified he didn't remember any of this. So what Drago had to go with was the officers' accounts of the incident. They were all consistent with pretty much the perfect example of resisting a peace officer and disarming a peace officer in aggravated battery. In other words, Drago's opinions were basically conjecture and speculation. There's no way evidence in the record would amount to the opinions that were limited. There's no way the evidence in the record could come up with that without conjecture and speculation. It's well settled. People versus Seha recently stated, regardless of how skilled or experienced an expert may be, the expert may not state a judgment or opinion based on conjecture or speculation. Here are the materials reviewed by Drago and their trial testimony. The police's trial testimonies were consistent of defendant being the initial aggressor. It would take a tremendous leap of logic and common sense to argue that them shaking defendant's shoulder to wake up is somehow an act of aggression. Why did the trial judge permit this issue to be submitted to the jury? I think it was a compromise on the trial judge's part. He was given two different instructions. He took the pattern instruction. The state's position would be that that was probably too lenient for him to do. Because as you stated and as I cited in possibly the wrong section of my brief, People versus Haynes, the first district case, a self-defense instruction should only be given in a resisting arrest case when a defendant resists arrest after the officer's resort to using excessive force. Of course, here the only conclusion is that the officer's use of force is because of defendant's violent resistance. A self-defense instruction is inappropriate in this case where defendant resisted arrest and then officers used force to effectuate the arrest. The same could be said here. Just an example of Drago's limited opinions, number five states, the officer shook defendant in such a way that startled him. In startling him, the officers misconstrued his reaction as trying to fight him. There's simply nothing in the record to support this. Like Drago could not have interviewed defendant to get his side of the story. There's no evidence in the record that the officers believed defendant was startled when he kicked Officer Regone. It was simply based on conjecture and speculation, this opinion. Same with opinion 13, the use of tasers during this incident caused defendant to move and act involuntarily. Again, nothing in the record to support that opinion. Officer Drago admitted he's not a medical or scientific expert and his 26, I guess you could call them, written conclusions, there was no basis, there was no medical or scientific accepted principles that he would base this opinion on. So in other words, they were based on conjecture and speculation. The trial court did not abuse its discretion in limiting Drago's testimony. In fact, the state was in a position that the defense counsel sort of got around Drago's limitations by giving him hypothetical situations exactly like the factual situation in the present case. Of course, this would go to the harmless error argument. Drago was allowed to testify. He testified to the use of force continuum and testified, like I said, to exact hypothetical situations, exact to the present case, and stated that in those cases the officer's similar use of force wouldn't be justified.  Even when the defendant was tased too many times, I think Drago said that the maximum amount of times for a person to be tased was five, I think, the jury heard all of this. Any rational jury would have inferred that Drago obviously thought the officers here used excessive force in his opinion. Still, presumably the jury found the four officers at the scene's testimonies, which were consistent with each other, more credible than Drago's testimony, which was based almost purely on conjecture and speculation. So even if it was error to limit Drago's testimony, any error was harmless. For the jury instruction argument, the voluntary act instruction, the defendant argues that should have been given for two different reasons. One, the defendant was still asleep when he kicked Officer Ragon, and two, multiple tases could have rendered him incapable of controlling his muscles. The defendant is correct that only slight evidence is needed to justify an instruction. However, here there was no evidence to support either one of these positions. All of the officers testified for the sleep argument. The defendant verbally responded when they told him to wake up the first time. The defendant himself never testified? He did testify. He testified he didn't remember anything about the incident. The officers testified. The defendant verbally responded, saying, leave me alone, I'm trying to sleep, the first time. Then the officers told him to wake up again, shake his shoulder, identify themselves as police. As soon as they identified themselves as police is when the defendant went off, looked at Officer Ragon, kicked, punched, came up off the couch, kicking and punching. Rearing back, he also reared back before he kicked Officer Ragon. Of course, this indicates a deliberate act on the defendant's part, not something that someone would do if they were just flinching or asleep or startled. And again, the evidence shows that the defendant wasn't startled by the shaking of the shoulder. The police testified consistently that the defendant sprung to action when they identified themselves as police. And of course, looking at Officer Ragon, the evidence only suggests that the defendant was awake, presumably the first time they told him to wake up, but definitely the second time, which was when he first kicked Officer Ragon. Multiple tases argument. Again, the evidence didn't support this position at all. The officers all testified the defendant was punching and kicking before any tases happened. They also testified that the punches and kicks were similar before and after the tases. And they testified that the defendant was basically stating that the tases had no effect on him, saying it didn't hurt, and taunting them to tase him again during the whole struggle. Meanwhile, there was no medical or scientific evidence to support this, rendering him incapable of controlling his muscle argument. Drago attempted to testify in that arena, but the trial court properly limited his testimony as he had no medical or scientific expertise. And even in his written opinion, there is no medical or scientific basis for forming the opinion that somehow a tase would allow the defendant to keep punching and kicking in the same manner that he was before being tased. The attempt definition. This was forfeited. The defendant didn't ask for a definition of attempt and didn't raise this issue in his post-trial motion. Also, it was a general, non-technical language. The definition of attempt was not an alternative definition of attempt. It was the general understanding of the word. In People v. Edwards, I cited in my brief, the 2nd District held that the trial court's failure to sua sponte instruct the jury on the statutory definition of robbery was not a reversible error. They stated that we believe a term that is employed in a general, non-technical context need not be defined as long as nothing in the instruction obscures its meaning. The use of the term robbery in the felony murder instruction given to the jury in this case was unobscured, and the general understanding of the meaning of the term robbery provided the jury with the definition it needed. Here, the word attempt is the same deal. In the disarming of peace officer instruction, it was general, non-technical understanding of the word. There was no possibility that the jury was confused by the term as it was used in the instruction. How about counsel's argument that just the mere touching of the weapon may have justified, since the jury wasn't otherwise instructed, their finding him guilty on that? Here, there was overwhelming evidence of the required substantial step, not just the mere touching. I also cited People v. Bell, which addresses that exact issue. It's a Fifth District recent case. It held that overwhelming evidence factors into the determination whether failure to instruct the jury on the definition of an attempt is reversible error. There, the court held that there was overwhelming evidence of the required substantial step, so any failure was not reversible error. Wasn't there an acquittal on one of the disarming counts, though? I think maybe Smith, the officer Smith, which admittedly there was less evidence of, corroborating evidence at least, of defendants attempting to take Smith's gun than there was Ragone's, but officer Ragone testified clearly that defendant not only tried to take his gun but was pulling up on it. Other officers testified that there are observations of Ragone stating, he's trying to disarm me, he's trying to disarm me. Here, there was overwhelming evidence. There was no way that the substantial step in taking officer Ragone's gun was not established by the evidence. And pursuant to Bell, that shows that this was not reversible error, if it was an error at all. I think there was one more instruction. The instructions two and three, like I stated, counsel sort of gave the impression to the trial court that it was either-or on the last two. On the, what was it? Use of force, use of force to resist an arrest. Self-defense instruction. Instruction three was one that counsel drafted himself. Instruction two was a pattern jury instruction. Counsel even said, explained to the trial court, instruction three was another way of saying the same thing as instruction two. He also told the court it was his own instruction that he had prepared and it's not one that any judge has given yet that I know of. Trial court properly went with the pattern jury instruction instead of three. There was no objection to the denial of three. And here I would argue, the state would argue, that this was not only a forfeiture but a waiver on the defendant's part, as him saying another way of saying the same thing is sort of implicitly stating that give one or the other. If you have no more questions. Are you sure instruction two was IPI not modified? It was modified. It was a modified version of IPI 24-25.20. And how was it modified? I think the last sentence to tell you the truth. This rule, however, does not apply to a situation in which an officer uses excessive force prior to a defendant's use of force to resist an arrest. And the word prior is pretty significant, isn't it? True. Yeah. And I ask that because in the, and I have to ask counsel in rebuttal, in their brief they argued about that instruction, but in doing so they left out the word prior, which I think was fairly significant. I don't know if you noticed that or not when you were looking at the briefs. I did not in the appellate defender's first brief. I did not notice that. Okay. Thank you. Thank you. Rebuttal, please. Defendant's two was a non-IPI. Defendant's three was a modified IPI. And the word prior is in the two. Say that again. Defendant's instruction number two indicates that it's a non-IPI based on several cases. According to the instruction, defendant's instruction number three is IPI criminal 24-2506 modified, based on the Witts and Sims case. And the instruction that was given does indicate that the excessive force prior to the defendant's use, but the instruction that was not given, the one that we believe was the instruction that would have told the jury that the defendant was justified in the use of force, doesn't say anything about it having to be prior to. The state is relying on the state, basically on the police officers, and they are the ones that were present that remembered what happened, because Mr. Minders, when he testified, said that he remembered nothing other than waking up three weeks later from a coma. But we do have other evidence of what happened in that room. The jury did not have to believe anything the police officers said. They could have believed the testimony of James Albertson and Deb Albertson. James Albertson testified that when he walked into the room, he saw the police punching and kicking the defendant while he was on the ground. Deb Albertson also testified that they were hitting and kicking the defendant while he was on his stomach. She testified that she saw the officer standing by his head administer three stomps to his head. Based on that evidence, the jury could have found that the police officers in this case were using excessive force. And it's our position that the jury didn't have to believe what the police officers said in this case. They clearly had a motive to minimize their conduct. It's for these reasons that we don't feel that he was properly allowed to present a defense in this case, and he should receive a new trial. Thank you. Okay. Thanks to both of you. The case is submitted and the court stands in recess.